HARTLEY *v.* BROTHERHOOD OF RAILWAY AND STEAM-
SHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND
STATION EMPLOYEES.

1. TRADE UNIONS—RAILROAD BROTHERHOOD—MEMBERSHIP.

Membership in railroad brotherhood, a voluntary unincorporated
association organized to promote unity of action and the gen-
eral welfare of the members, *held,* to create in such members,
under the brotherhood's constitution, statutes and protective
laws, no contractual rights guaranteeing individual members
that no action will be taken or agreements made for the benefit
of brotherhood as a whole if such action should operate to the
detriment of an individual member.

2. SAME—SENIORITY RIGHTS—MODIFICATION BY AGREEMENT BE-
TWEEN EMPLOYER AND BROTHERHOOD.

In action by plaintiff, a married woman who had been employed
by a railroad company for a number of years during which she
had acquired seniority rights under an agreement between the
company and defendant brotherhood, a voluntary unincorpo-
rated labor association, to recover damages for breach of al-
leged contract between plaintiff and defendant for loss of sen-
iority rights, defendant *held,* to have the power to modify or
destroy such rights in the interest of all the members by the
same method as they were created, *i. e.,* an agreement with the
employer.

3. SAME — SENIORITY RIGHTS — MODIFICATION — BAD FAITH — ARBI-
TRARY ACTION—FRAUD.

Seniority rights accorded members of a voluntary unincorporated
labor association pursuant to its constitution and by-laws and
agreement between association and employer may be modified
in the general interest of all members of the association not-
withstanding the effect thereof to an individual member pro-
viding such modification is not accomplished as a result of bad
faith, arbitrary action, or fraud directed toward such member.

4. SAME—SENIORITY RIGHTS—MARRIED WOMEN—REDUCTION OF PER-
   SONNEL—BREACH OF CONTRACT.

   Agreement between employer and voluntary unincorporated labor
   association, executed when economic conditions necessitated a
   reduction in personnel, whereby married women were to be re-
   lieved from service unless extenuating circumstances were
   shown, *held*, not to have breached contractual rights forming
   basis for action against association by married woman who
   showed neither extenuating circumstances on her own part nor
   bad faith, arbitrary action or fraud directed at her by associa-
   tion.

5. SAME—SENIORITY RIGHTS—INTERFERENCE BY COURTS.

   Action of brotherhood in denying within its organization relief
   to plaintiff, a married woman member who lost her seniority
   rights and employment with railroad company as result of
   agreement between brotherhood and company when latter had
   to reduce personnel, is not interfered with by courts where de-
   nial of such relief is not shown to have been accompanied with
   bad faith, arbitrary action or fraud on part of anyone partici-
   pating in the disposition of her claim.

Appeal from Wayne; Moll (Lester S.), J.   Sub-
mitted January 7, 1938.   (Docket No. 79, Calendar
No. 39,832.)   Decided February 24, 1938.   Rehear-
ing denied June 14, 1938.

Action by Martha O. Hartley against Brotherhood
of Railway and Steamship Clerks, Freight Handlers,
Express and Station Employees, a voluntary unin-
corporated association, for damages for breach of
contract and loss of seniority rights.   Judgment for
defendant.   Plaintiff appeals.   Affirmed.

*Albert McClatchey* and *Maurice Black* (*Thomas
W. Payne*, of counsel), for plaintiff.

*Wiley, Streeter & Ford* and *Mulholland & Mul-
holland*, for defendant.

CHANDLER, J.   Defendant, hereinafter called the
brotherhood, is a voluntary unincorporated labor as-

sociation of which plaintiff has been a member for a number of years, the purposes of said organization being recited in the preamble to its constitution as follows:

"Unity guided by intelligence is a bulwark of strength that can withstand all attacks. Without intelligent organization we cannot acquire the discipline which enables us to act together, concentrate our strength and direct our efforts toward a common purpose.

"Therefore, for the purpose of promoting such unity of action, for our mutual protection and to promote the general welfare of our crafts, the organization known as the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees has been established."

In 1921 defendant entered into an agreement with the Grand Trunk Railway system, hereinafter called the railway. The agreement related to the working conditions of certain employees, according certain rights and privileges and in addition to other provisions, rules relative to seniority rights of various employees were promulgated:

"Promotion basis—Promotions to positions coming within the scope of this agreement shall be based on ability, merit and seniority, ability and merit being sufficient, seniority shall prevail, supervising officer to be the judge." (Rule 4, art. 3.)

"Reducing force—When force is reduced the senior employees on the seniority district, or subdistrict, capable of doing the work, will be retained, merit and ability to be given consideration in accordance with rule 4 of this article." (Rule 16, art. 3.)

"Exercising seniority—The exercise of seniority in reduction of force or displacing junior employees

provided for in this article is subject to the provisions of rule 4 of this article.'' (Rule 25, art. 3.)

''Date effective—Effective July 1, 1921, this agreement shall supersede and annul all existing agreements and practices or working conditions in conflict therewith, subject to 30 days' written notice given either party by the other of a desired change.'' (Rule 70, art. 12.)

In 1930, the railway commenced to receive protests from groups of its employees and individuals because married women were retained in its employ, while others, who had no other source of income were dismissed when a reduction of personnel became necessary. The situation became so acute that in December, 1931, the railway notified defendant that it would be necessary to modify the rules relative to a reduction of personnel. Negotiations between representatives of the defendant and the railway resulted in the following agreement, executed March 7, 1932, by Charles L. Brisley, local chairman of the brotherhood in the district in which plaintiff was employed:

''Effective March 16, 1932, all married women will be relieved from the service, irrespective of seniority, unless there are some extenuating circumstances to be presented to a representative of the management and the local chairman or other clerk, who will decide.

''Hereafter, any female employee getting married will immediately be relieved from the service.

''To the extent that the provisions hereof are inconsistent with or conflicting with the provisions of the agreement between the Grand Trunk Railway System (lines in the United States) and all that class of clerks and other office and station employees represented by the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station

Employees, bearing the effective date of July 1, 1921, this agreement shall be deemed to supersede all of such inconsistent or conflicting provisions.''

Plaintiff, a married woman, was employed by the railway from December 29, 1919, to March 18, 1932, during which period she had acquired seniority rights under the provisions of the agreement of 1921. Her employment with the railway was terminated in accordance with the agreement of March 7, 1932, no extenuating circumstances being found to exist in her particular case after full and complete investigation.

She appealed her case in the order provided by the protective laws of the brotherhood to its highest tribunal, her claim in each instance being denied. This suit is prosecuted to recover damages for breach of contract alleged to exist between plaintiff and the brotherhood on the theory that the brotherhood, having created her seniority rights by the agreement of 1921, could not subsequently enter into another agreement whereby such rights were altered or ceased to exist. The trial court entered a judgment of no cause of action from which this appeal is taken.

Plaintiff is somewhat vague as to what contractual rights existing between herself and the brotherhood have been breached, but states in her brief:

''The selection of the members to be employed is entirely with the employer, but after the selection is made and the members employed, both the employer and the members employed must comply with the provisions of the agreement made between the union and the employer.

''This, we contend, is the agreement between the union and its members. Any attempt by the union to designate which members shall be employed and

which members shall not be employed, is a violation of the agreement making the union liable to the member or members discriminated against for any damage they sustain through the violation of the contract by the union."

The purposes of the brotherhood, as stated in the preamble to the constitution, are to promote unity of action and the general welfare of the members thereof. These purposes are accomplished by the instrument of collective bargaining with the employer as to conditions of employment, etc. But by becoming a member of the brotherhood, no contractual rights arose out of the constitution, statutes and protective laws which guaranteed plaintiff that no action would be taken or agreements made for the benefit of the brotherhood as a whole if such action should operate to the detriment of plaintiff as an individual.

The seniority rights acquired by her did not arise by virtue of her contract of employment with her employer, but existed by reason of the agreement of 1921 between the railway and the brotherhood. *Ryan v. Railroad Co.,* 267 Mich. 202. This agreement was executed for the benefit of all the members of the brotherhood and not for the individual benefit of plaintiff. When, by reason of changed economic circumstances, it became apparent that the earlier agreement should be modified in the general interest of all members of the brotherhood it was within the power of the latter to do so, notwithstanding the result thereof to plaintiff. The brotherhood had the power by agreement with the railway to create the seniority rights of plaintiff, and it likewise by the same method had the power to modify or destroy these rights in the interest of all the members.

A different situation might be presented had the agreement of 1932 been accomplished as a result of bad faith, arbitrary action, or fraud directed at plaintiff on the part of those responsible for its execution. No claim or showing of such a nature is made in this case. The railway notified the officers of the brotherhood, in accordance with Rule 70, art. 12, *supra,* that the protests against the retention of married women in its employ were becoming so acute as to result in a serious impairment of personnel relations, and that it was imperative that the situation be corrected. Meetings were held and the majority vote of those in attendance favored the present agreement. By the execution of the agreement, no contractual rights of plaintiff were breached permitting her to maintain this action.

Furthermore, the laws of the brotherhood make provision for the determination of grievances of its members. Plaintiff presented her grievance and appealed her claim to the highest tribunal in the union. Here again, there is no intimation of bad faith, arbitrary action or fraud on the part of anyone participating in the disposition of her claim. In such instances, the courts will not interfere. *Ryan* v. *Railroad Co., supra,* and cases cited therein.

Judgment affirmed, with costs of this appeal to defendant.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, NORTH, and MCALLISTER, JJ., concurred.