OKLAHOMA ALCOHOLIC BEVERAGE CONTROL BOARD, composed of Archie Stout, Logan Garnett, Charles Johnson, and M. G. McCool, as members, and Roy P. Parham, as Director of the Oklahoma Alcoholic Beverage Control Board, Plaintiffs in Error,

v.

CENTRAL LIQUOR COMPANY, a partnership composed of Z. T. Naifeh, Rose Naifeh, and Robert Naifeh, Defendant in Error.

No. 41721.

Supreme Court of Oklahoma.

Dec. 6, 1966.

Charles Nesbitt, Atty. Gen., Joseph C. Muskrat, Asst. Atty. Gen., for plaintiffs in error.

Miskovsky, Sullivan, Embry, Miskovsky, & Turner, Oklahoma City, for defendant in error.

HODGES, Justice.

This proceeding was commenced on May 17, 1965, by the Central Liquor Company, hereinafter referred to as the petitioner, to enjoin the enforcement of a directive of the Oklahoma Alcoholic Beverage Control Board, hereinafter referred to as the Board, requiring liquor wholesalers, including the petitioner, to cease and desist from the practice of giving discounts to liquor retailers based upon quantity purchases. From the judgment of the trial court for the petitioner and overruling the motion of the Board for new trial, the Board appeals.

Earlier litigation between these parties is pertinent to this dispute. On January 11, 1963, the petitioner filed suit for a declaratory judgment to determine the validity of a minimum price regulation enacted by the Board. This regulation required each wholesaler to submit a price list containing "a proposed percentage price markup above laid-in cost" for spirits, for cordials and specialties, and for wines. The composite price posting filed by the wholesalers in each of these three categories was to be the minimum price below which the wholesalers could not sell. The minimum price was to be recomputed each succeeding three month period in the same manner.

On February 13, 1963, the trial court rendered judgment in that case declaring the minimum price regulation to be void and unenforceable. The appeal from that judgment was subsequently dismissed by the Board.

The directive precipitating the instant controversy was issued by the Director of

the Board on April 22, 1965. This directive in part provided:

"TO ALL LICENSED WHOLESALERS OF SPIRITS AND WINES: "You are advised that on this date I have consulted with the Attorney General, who is the legal advisor of the A.B.C. Board, relative to existing differences in the cost per bottle between case prices and bottle prices. It is his opinion and is also my own that such a system of posting and all sales made under such a system amount to a discount and is something which Sub-section 2 of Section 536 defines to be unlawful and is specifically prohibited. For this reason, each licensed wholesaler of spirits and wines shall immediately cease and desist from making sales of any item of alcoholic beverages at more than one price regardless of the number of containers sold. Any wholesaler of spirits and wines selling any item at more than one price after Saturday, April 24, 1965, will be cited. * * *"

In its petition in the instant controversy, the petitioner alleged that this directive violated the provisions of the former judgment of February 13, 1963, and that the petitioner was entitled to further relief under that judgment in the form of an injunction prohibiting enforcement of this directive by the Board. Specifically, the petition alleged that the Board was "without authority to fix or set prices of alcoholic beverages at the wholesale level * * * and is denying the plaintiff, as a wholesaler, the right to determine and post a different price per bottle than in case lots, all as appears by the directive of the 22nd day of April, 1965." An order was then directed to the Board to show cause why further relief under the declaratory judgment should not be granted. In addition, the petitioner caused a summons to be issued to the Board as in an original action. After the Board's demurrer to the petition was overruled, it answered asserting that the petition failed to state a cause of action, that the directive of the Board was authorized by the Constitution and statutes of the State of Oklahoma, and that the

court had no jurisdiction to grant the relief requested.

The evidence presented by the Board in this case established that most of the wholesalers had recently adopted a practice of discounting the price per bottle for alcoholic beverages purchased by the case. The Director of the Board testified:

"Practically all of the wholesalers are doing the same thing. They fix a certain price order by the case. That may be anywhere from two to seven percent higher if it is (purchased) by the bottle."

The Director further testified that the purpose of the Board's directive was to prohibit these price differentials based on quantity purchases. The petitioner admitted that its practice was to sell alcoholic beverages at a reduced cost per bottle if the purchase was by the case. The evidence of the petitioner was that it posted all of its prices including the price per bottle and the price per case; and that it did not discriminate in making sales but sold to all retailers on the same price basis depending upon whether the retailer purchased by the bottle or by the case.

On August 25, 1965, the trial court rendered judgment granting the "further relief" requested. The journal entry states:

"* * * The Court should enter a judgment at this time affording the petitioner further relief and prohibit and enjoin the respondents (Board) from proceeding further under said directors' regulation of April 22, 1965, as amended, and the proceedings of the Oklahoma Alcoholic Control Board of May 13, 1965, as being an attempt by the respondents (Board) to fix prices at the wholesale level in violation of the declaratory judgment heretofore entered and beyond the authority of said respondents (Board) under the Constitution and Laws of the State of Oklahoma."

The first question to be resolved on this appeal is whether the trial court acquired jurisdiction of this dispute. The judgment of the court in this proceeding purports to

grant "further relief" under its declaratory judgment of February 13, 1963.

■ Our Declaratory Judgments Act, now codified as Sections 1651 to 1657, inclusive, in Title 12 of Oklahoma Statutes, was adopted in 1961. Okl.Sess.Laws 1961, c. 2, p. 58. This act is substantially equivalent to the Uniform Declaratory Judgments Act that has been adopted with minor variations by most of the other states. See Fraser, Oklahoma's Declaratory Judgment Act, 32 OBJ 1447; 9A Uniform Laws Annotated, p. 1. Our act provides that further relief may be granted "whenever such relief becomes necessary and proper" against a party "whose rights have been determined." 12 O.S.1961, § 1655. A similar provision is contained in the uniform act. Uniform Declaratory Judgments Act, § 8, 9A U.L.A. This provision authorizes the court to grant any appropriate supplemental relief, whether declaratory or executory, whenever such relief becomes necessary in order to effectuate the declaratory judgment. Thomas v. Cilbe, Inc., Fla.App., 104 So.2d 397; Great Northern Ry. Co. v. Mustad, 76 N.D. 84, 33 N.W.2d 436; Morris v. Ellis, 221 Wis. 307, 266 N.W. 921; 2 Anderson, Declaratory Judgments, 2d Ed., § 451; Borchard, Declaratory Judgments, 2d Ed., p. 441. Contra Brindley v. Meara, 209 Ind. 144, 198 N.E. 301, 101 A.L.R. 682. But this provision was not intended to give the court continuing jurisdiction to resolve subsequent disputes between the parties over matters not involved in the original litigation. Belanger v. Local Division No. 1128, 256 Wis. 479, 41 N.W.2d 607. If the declaratory judgment is not res judicata in the subsequent dispute, further relief under the declaratory judgment is not authorized.

■ The original dispute between these parties resulting in the declaratory judgment proceeding concerned the authority of the Board to establish a minimum price below which the wholesalers could not sell alcoholic beverages. The question of discounts was not presented by the pleadings nor considered by the court. In the instant dispute, the Board's directive does not purport to regulate the selection of minimum prices by the wholesaler. The issue here involved is whether the price of an item, once established by the wholesaler, must be the same regardless of the quantity sold. Stated differently, this dispute concerns the right of the liquor wholesaler to give a discount from the price of an item when it is purchased in quantity. As this issue was not presented or litigated in the declaratory judgment proceeding, that judgment is not res judicata in this dispute. Tilley v. Allied Materials Corp., 208 Okl. 433, 256 P.2d 1110; Cowger v. Wall, 198 Okl. 616, 181 P.2d 252. The trial court was without jurisdiction to grant further relief.

■ We believe, however, that the trial court had jurisdiction of this dispute on another basis. The petition commencing this action properly alleges a cause of action by the petitioner against the Board for unlawful interference with its pricing policies. Summons was issued to the Board, and the Board filed its answer properly joining issue with the allegations contained in the petition. A full scale trial was had on the merits of the controversy with both parties provided the opportunity to present all their evidence. Despite the fact that in form the judgment purports to grant further relief, it is quite clear that the substance of the judgment is to enjoin the enforcement of the directive as being an attempt by the Board to engage in unlawful price fixing.

After carefully reviewing the record, we conclude that the trial court acquired jurisdiction of this dispute as a separate and independent action and that all of the rights of the litigants were preserved, even though the trial court improperly characterized the action as a further proceeding between the parties under the earlier declaratory judgment.

We turn now to an examination of the merits of this controversy.

The evidence clearly established that many of the liquor wholesalers of this state, including the petitioner, were engaging in

the practice of selling alcoholic beverages at a reduced price per bottle if purchased by the case. It logically follows that if this practice is authorized, additional price reductions upon the price per bottle would also be authorized upon purchases in greater quantities, such as 10 cases or 50 cases or a truck-load shipment. Therefore both parties to this dispute recognize that the issue presented is whether quantity discounts, or as it is often termed volume pricing, is an authorized practice by wholesalers under the Oklahoma Alcoholic Beverage Control Act (37 O.S.1961, §§ 501–570). The specific section of this act involved in this dispute is 37 O.S.1961, § 536, which provides:

"(a) (1) It shall be unlawful for any person privileged to sell alcoholic beverages to wholesalers or retailers to discriminate, directly or indirectly, in price between one wholesaler and another wholesaler or between one retailer and another retailer purchasing alcoholic beverages bearing the same brand or trade name and of like age and quality; or

"(2) to grant, directly or indirectly, any discount, rebate, free goods, allowance or other inducement.

"(b) The Board is hereby authorized to promulgate rules which are necessary:

"(1) To carry out the purpose of this Section and to prevent its circumvention by offering or giving of any rebate, allowance, free goods, discount or any other thing or service of value;

"* * *."

The Board contends that the statute clearly prohibits any type of discount by liquor wholesalers and that its directive, as set out above, was issued pursuant to the specific mandate contained in this section "to prevent its circumvention by offering or giving of any * * * discount * * *." We agree with the Board.

■ The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention and purpose of the Legislature. Adams v. Fry, 204 Okl. 407, 230 P.2d 915; Stemmons, Inc. v. Universal C. I. T. Credit Corp., Okl., 301 P.2d 212. This legislative intent is to be first sought in the language of the statute itself, and if it is there plainly expressed it must be followed without further inquiry. Mid-Continent Pipe Line Co. v. Stephens County Excise Board, Okl., 312 P.2d 883; Woods v. Phillips Petroleum Co., 207 Okl. 490, 251 P.2d 505. In Stemmons, Inc. v. Universal C. I. T. Credit Corp., supra, we quoted the following language with approval from 50 Am.Jur., Statutes, § 228:

"* * * It is not within the province of a court, in the course of construction of a statute, to make or supervise legislation. A statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten, or given a construction of which its words are not susceptible, or which is repugnant to its terms. The terms of the statute may not be disregarded. To depart from the meaning expressed by the words of a statute, is to alter it, and is not construction, but legislation."

■ The language of Section 536 of the Oklahoma Beverage Control Act is plain and unambiguous, and its meaning is clear and unmistakable: any discount, rebate, free goods, allowance or other inducement by a wholesaler is unlawful. See Oklahoma Alcoholic Beverage Control Board v. Naifeh, Okl., 388 P.2d 855, 856. The Board is authorized, and indeed obligated, to enforce the requirements of this legislation. The directive prohibiting quantity discounts by liquor wholesalers is valid and enforceable.

The petitioner argues that Section 536 should be interpreted to permit open, above-board discounts and to prohibit only sub rosa, under-the-table transactions that are discriminatory in nature. Petitioner points out that its discount price would be posted with the Board and available to all licensed purchasers on an equal basis without discrimination. The fallacy of this argument is that it fails to differentiate between Section 536(a)(1) which prohibits discriminatory acts only, and Section 536(a)(2) which

prohibits the enumerated acts entirely. The interdiction against discounts is unqualified. As seen above, this court may not amend or distort the plain language of a statute under the guise of statutory construction.

The petitioner next contends that the Legislature did not intend to prevent "volume discounts" by adopting the Oklahoma Alcoholic Beverage Control Act. It is the position of petitioner that price reductions based upon volume sales are a wide spread business practice based upon sound economics; and that the statute should not be construed to eliminate such an acceptable business practice. Petitioner relies upon the following language from Bruce's Juices, Inc. v. American Can Co., 330 U.S. 743, 745, 67 S.Ct. 1015, 1016, 91 L.Ed. 1219, 1223:

"* * * Quantity discounts are among the oldest, most widely employed and best known of discount practices. They are common in retail trade, wholesale trade, and manufacturer-jobber relations. They are common in regulated as well as unregulated price structures. * * *"

■ We believe that the fact that quantity discounts are among the "best known of discount practices" strengthens the conclusion that such discounts are within the purview of our statute. Certainly our Legislature was well aware of this widely employed practice and could easily have inserted language authorizing discounts based upon quantity had it intended such an exception to Section 536. It did not do so.

■ The Oklahoma Constitution provides that our Legislature shall enact laws providing for the strict regulation and control of the liquor industry of this State. Okl.Const., Art. XXVII, § 3. In State ex rel. Hart v. Parham, Okl., 412 P.2d 142, 151, we stated:

"* * * The control of liquor traffic is a complicated and difficult task. The Legislature should be accorded considerable discretion as to the method to be

employed in providing the necessary control and supervision required."

It is not within the province of this Court to determine the advisability or wisdom of price discounts in the sale of alcoholic beverages. That is a matter for determination by our Legislature in fulfilling its responsibility to provide strict control and regulation of traffic in intoxicating liquor.

The two cases primarily relied upon by the petitioner are not in conflict with our decision inasmuch as they involve an interpretation of statutory enactments different from our own. In Foremost Dairies, Inc. v. Thomason, Mo., 384 S.W.2d 651, the court concluded from examination of the language of the Unfair Milk Sales Practices Act that the Missouri Legislature intended to prohibit only arbitrary price reductions "made in order to obtain business and thus divert trade from a competitor." In Terry Carpenter, Inc. v. Nebraska Liquor Control Com'n, 175 Neb. 26, 120 N.W.2d 374, the court found that the Nebraska statute did not make discounts unlawful and did not delegate authority to the liquor commission of that state to do so. As seen above Section 536 of the Oklahoma Alcoholic Beverage Control Act expressly provides that "any discount" is unlawful and that the Board shall enact necessary rules to prevent "any discount".

The final contention of the petitioner is that the Board may not lawfully set the minimum price at which liquor will be sold at the wholesale level.

The directive issued by the Board does not purport to set minimum prices for wholesale liquor, and that issue is not presented by this appeal. Each wholesaler continues to have the right to establish any price it chooses for alcoholic beverages. *After* the price has been established, the directive operates to prevent price deviation based upon quantity.

■ There can be no doubt that the Board is obliged to enforce the terms of the Oklahoma Alcoholic Beverage Control Act even though its action interferes with the pricing policies adopted by the whole-

saler. See Gambulos v. Oklahoma Alcoholic Beverage Control Board, Okl., 416 P.2d 959. The directive prohibiting quantity discounts was adopted by the Board pursuant to the specific requirement of Section 536 of this Act and is valid.

The judgment of the trial court is reversed with directions to enter judgment for the Board.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, IRWIN and BERRY, JJ. concur.

LAVENDER, J., dissents.